ABERDEEN WHITE, PLAINTIFF v. HUGH CHATHAM MEMORIAL HOSPITAL, INC., DEFENDANT

No. 8817SC821

(Filed 16 January 1990)

**Master and Servant § 8 (NCI3d) — personnel policies handbook — insurance coverage after employee disabled — unilateral contract**

> Defendant's personnel policies handbook which stated that a full time employee who became disabled during his employment would be able to maintain his group insurance constituted a unilateral contract based upon defendant's offer of extra benefits to employees who continued in its employment until disabled and plaintiff's acceptance of that offer by remaining in defendant's employment until she was disabled, and the trial court therefore erred in granting summary judgment for defendant on plaintiff's breach of contract claim.

**Am Jur 2d, Insurance § 1852; Master and Servant §§ 15, 127.**

APPEAL by plaintiff from *Brown, Frank R., Judge.* Order entered 9 May 1988 in Superior Court, SURRY County. Heard in the Court of Appeals 14 March 1989.

*Mills & Rives, by G. Wilborn Rives, for plaintiff appellant.*

*R. Lewis Alexander and R. Lewis Alexander, Jr., for defendant appellee.*

PHILLIPS, Judge.

Plaintiff's complaint alleging claims for breach of contract and for intentionally inflicting emotional distress was dismissed by an order of summary judgment under authority of Rule 56, N.C. Rules of Civil Procedure. The order is erroneous as to the breach of contract claim and correct as to the claim for intentionally inflicting emotional distress.

The affidavits and other materials before the court indicate in pertinent part that: Plaintiff was employed by defendant as a full-time nurses' assistant from March, 1951 to December, 1985 when she was discharged because of a disabling illness. The parties never had a written contract covering the employment. For several

years before her dischage plaintiff was covered by the company's low cost group medical insurance plan that had limits of $1,000,000. In January, 1983 defendant distributed to its employees, including plaintiff, a "Personnel Policies Handbook," which stated that: "A full time employee who becomes disabled during his employment will be able to maintain his group insurance." Plaintiff knew of the statement and became disabled while a full-time employee but was not permitted to continue her group medical insurance, as the policy of defendant's group carrier did not permit disabled former employees to continue under it. The individual policy that plaintiff was able to obtain costs more than the group policy, though its limits are only $100,000. Defendant's representation as to disabled employees being able to continue the group coverage was not withdrawn or disavowed before plaintiff became disabled. In denying that it was legally bound to make the coverage available and in discussing the matter with plaintiff defendant's employees were neither abusive nor demeaning but, as plaintiff testified in her deposition, were kind and considerate.

Obviously, the foregoing forecast of proof raises no genuine issue of material fact in the claim for intentionally inflicting emotional distress, *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979), and that claim was properly dismissed. Since plaintiff did not argue otherwise in the brief she abandoned the claim in any event. Rule 28(a), N.C. Rules of Appellate Procedure.

It is equally clear, however, that the forecast of evidence does raise a genuine issue of fact as to plaintiff's claim for breach of contract. For the contract that plaintiff alleged and that her materials support is not a mutually binding bilateral employment contract, as the court and defendant mistakenly assumed, but a unilateral contract based upon defendant's offer of extra benefits to employees who continued in its employment until disabled and upon plaintiff accepting that offer by remaining in defendant's employment until she was disabled. Defendant's argument that the record contains no indication that after receiving the handbook plaintiff promised to continue her employment is irrelevant, since unilateral contracts are not based upon mutual promises or obligations as bilateral contracts are:

> A unilateral contract is one in which there is a promise on one side only, the consideration on the other side being executed . . . It has also been defined as a promise by one

party or an offer by him to do a certain thing in the event the other party performs a certain act . . . .

17 C.J.S. *Contracts* Sec. 8, pp. 578-579 (1963). As is deducible from the foregoing, the distinctive features of an unilateral contract are that the offeror is the master of his offer and can withdraw it at any time before it is accepted by performance, and that while the offer is still outstanding the offeree can accept it by meeting its conditions. Such contracts have been enforced by our courts in many cases involving circumstances similar to those recorded here. One such case is *Brooks v. Carolina Telephone and Telegraph Co.*, 56 N.C. App. 801, 290 S.E.2d 370 (1982), where we held that plaintiff's suit for severance benefits unilaterally promised by the employer was not dismissible because the employer could have amended or withdrawn the offer before the employee met its conditions, but failed to do so; and another is *Roberts v. Mays Mills, Inc.*, 184 N.C. 406, 114 S.E. 530 (1922), where an employer's promise to pay a bonus to all employees who remained continuously employed until Christmas was held to be enforceable.

The statement in defendant's personnel book concerning the additional benefits that disabled employees could enjoy if they remained in its full-time employment until they became disabled — seriously and responsibly made from all appearances — is evidence that it was an offer to make its group insurance available to any employee who met the conditions stated; and that plaintiff knew about the offer and continued in defendant's employment until she became disabled is evidence enough that she accepted the offer. Nor is it a legal defense to the claim, as defendant argues, that defendant's group carrier may have no policy that permits full-time employees who become disabled to continue under it. For the benefit represented can be supplied either by similar coverages by other carriers or by money. If the contract was made it was certainly breached and defendant is obligated to pay the difference between the cost of the substitute coverage obtained and the cost of defendant's group coverage of $1,000,000 for one employee, which is the benefit that it stated would be available. That the substitute coverage obtained has limits less than $1,000,000 would not increase defendant's obligation as long as those limits cover her medical and hospital expenses, but upon the lesser limits ceasing to cover her medical expenses defendant's obligation would increase accordingly up to the difference between the limits and $1,000,000.

ASHEVILLE MALL, INC. v. SAM WYCHE SPORTS WORLD

[97 N.C. App. 133 (1990)]

Affirmed in part; reversed in part; and remanded.

Judges ARNOLD and JOHNSON concur.