Jennifer NORMAN, Plaintiff,

v.

**LOOMIS FARGO & CO., Defendant.**

No. 3:00CV412–H.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Nov. 14, 2000.

Claire J. Rauscher, Charlotte, NC, Dudley Avery Witt, White and Crumpler, Winston–Salem, NC, for Jennifer Norman.

Jackson N. Steele, Kilpatrick Stockton LLP, Charlotte, NC, for Loomis, Fargo & Co.

## *MEMORANDUM AND ORDER*

HORN, Chief United States Magistrate Judge.

**THIS MATTER** is before the Court on the Defendant's "Motion for Judgment on the Pleadings" (document # 7) and "Brief in Support ..." (document # 8), both filed September 28, 2000; and "Plaintiff's Response ..." (document # 11) and "Plaintiff's Brief in Opposition...." (document # 12), both filed November 3, 2000. Defense counsel has informed the Court that no reply will be filed.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this motion is now ripe for disposition.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will *grant in part* and *deny in part* the Defendant's motion, as discussed below.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Defendant Loomis Fargo & Company ("Loomis") is a Texas corporation which provides cash storage and armored car services. On October 5, 1997, Loomis' Charlotte, North Carolina office was robbed of more than $17,000,000 cash. Loomis offered a $500,000 reward "to persons who provide information to law enforcement authorities that results in the capture of the perpetrators of the theft and the recovery of the missing funds" and caused the reward offer to be broadcast on the television program "America's Most

Wanted," along with a story about the robbery and ensuing search for the suspects.

The Plaintiff, Jennifer Norman, is a resident of Gaston County, North Carolina, who saw the broadcast about the Loomis robbery and reward offer on "America's Most Wanted."

At the time of the robbery and reward offer, the Plaintiff was a legal secretary employed by Attorney Jeffrey M. Guller. Within days of the robbery, Ms. Norman, at Mr. Guller's direction, set up a file for Steven Eugene Chambers for closing the purchase of an expensive home in Cramer Mountain, North Carolina. Within the next two weeks, the Plaintiff saw "a large black leather duffle bag filled with ... stacks of money ... [and a piece of notebook paper with] '$436,000' on it" inside a cardboard box located in a storage room. Four days later, Chambers' wife brought in money orders in amounts between $50,000 and $80,000, payable to Mr. Guller, and the Plaintiff assisted Mr. Guller in depositing the money orders in his bank account. The Plaintiff told Mr. Guller about the reward offer and opined, "this is Loomis money," to which Mr. Guller replied that "[she] could not prove it."

As it turned out, the Plaintiff was correct: the Chambers were accomplices in the Loomis robbery, for which they have since been convicted and sentenced to lengthy terms of imprisonment, and were using their ill-gotten proceeds to purchase the subject property.

Shortly after her conversation with Mr. Guller, the Plaintiff called the broadcasted telephone number and told an "America's Most Wanted" operator about the Chambers, Mr. Guller, the cash, the money orders, and purchase of the expensive home. The operator replied that "they were not looking for Steve Chambers but were looking for [another suspect]."

The Plaintiff alleges, however, that as a result of information she provided, "authorities placed wiretaps on the phones of individuals involved in said robbery which provided information leading to the arrest and conviction of individuals involved in said robbery."

Whatever the immediate response to the Plaintiff's telephone call to "America's Most Wanted," it is clear that the Plaintiff *was* subsequently interviewed by law enforcement; that she *did* cooperate in the investigation prior to the arrest of some defendants; and that she *did* testify against her former employer, Mr. Guller, at his trial on money laundering charges. In the light most favorable to the Plaintiff it also appears that her cooperation and testimony contributed to forfeiture of the Cramer Mountain home and other assets purchased with Loomis cash, as well as to the recovery of substantial restitution in the Jeffrey Guller case.

Despite her cooperation and testimony, however, the Defendant maintains that the Plaintiff has not met the terms of the reward offer—that is, that the substance of Plaintiff's call to "America's Most Wanted" was not passed on to law enforcement authorities, and therefore, never itself resulted in any arrests. Loomis also contends that any helpful information and testimony provided by Plaintiff at a later time was used only against Mr. Guller, who was not a "perpetrator" of the robbery.

On August 1, 2000, the Plaintiff filed the instant Complaint in Gaston County Superior Court alleging claims for breach of contract and unfair and deceptive trade practices. On August 23, 2000, Loomis removed the state court action to this Court, based on diversity jurisdiction, which removal has not been challenged by the Plaintiff.

On September 28, 2000, Loomis moved for judgment on the pleadings. The motion has been briefed, as set forth above, and is now ripe for disposition.

Because the Plaintiff has pled sufficient facts to support a unilateral contract, but has not pled sufficient facts to support an unfair and deceptive trade practices claim,

Loomis' motion will be granted as to the unfair and deceptive trade practices claim but denied as to the contract claim.

## II. *DISCUSSION*

### A. *Standard of Review*

In deciding a Rule 12(c) motion for judgment on the pleadings, the court must apply the standard for a Rule 12(b)(6) motion. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir.1999); *Frey v. Bank One,* 91 F.3d 45, 46 (7th Cir.1996); *Turbe v. Government of V.I.,* 938 F.2d 427, 428 (3d Cir.1991); *and Morgan v. Church's Fried Chicken,* 829 F.2d 10, 11 (6th Cir.1987).

"A motion to dismiss under [Fed. R.Civ.P. 12(b)(6) ] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir.), *cert. denied,* 510 U.S. 828, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993), *citing* 5A C. Wright & A. Miller, *Fed. Practice and Procedure* § 1356 (1990).

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim." *McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 328 (4th Cir.1996) *(en banc ), citing Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989); *and Johnson v. Mueller,* 415 F.2d 354, 355 (4th Cir.1969). *Accord Republican Party of NC,* 980 F.2d at 952 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal citation omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true.

*See, e.g., Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993); *Martin Marietta v. Int'l Tel. Satellite,* 991 F.2d 94, 97 (4th Cir.1992); *and Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4th Cir.1989).

### B. *Breach of Contract Claim*

■ The offer of a reward for doing a specified act, like providing information that solves a crime or leads to the arrest of a criminal, is an offer for a unilateral contract. *Simmons v. United States,* 308 F.2d 160, 164–65 (4th Cir.1962). *Accord Sharp Electronics Corp. v. Deutsche Financial Services Corp.,* 216 F.3d 388, 393–94 (4th Cir.2000); Corbin, *Contracts* § 1489 (1962); *and Restatement (Second) of Contracts* § 53 (1932).

■ Under North Carolina law, "a unilateral contract is defined as a promise by one party, or an offer by him to do a certain thing, in the event the other party performs a certain act ... and ... [the] offeree can accept [the offer] by meeting its conditions." *White v. Hugh Chatham Memorial Hosp., Inc.,* 97 N.C.App. 130, 131–32, 387 S.E.2d 80, 81 (1990). *Accord Roberts v. Mays Mills,* 184 N.C. 406, 114 S.E. 530 (1922); *Morrison v. Parks,* 164 N.C. 197, 80 S.E. 85 (1913); *Hamilton v. Memorex Telex Corp.,* 118 N.C.App. 1, 10–11, 454 S.E.2d 278, 283 (1995); *and MacEachern v. Rockwell Intern. Corp.,* 41 N.C.App. 73, 76, 254 S.E.2d 263, 265–66 (1979).

■ In the light most favorable to the Plaintiff, the reward offer by Loomis—"to persons who provide information to law enforcement authorities that results in the capture of the perpetrators of the theft and the recovery of the missing funds"— was an offer for a unilateral contract which Plaintiff accepted by calling the "America's Most Wanted" hotline and giving information then, and subsequently, about the sto-

99

len cash, the Chambers, the extraordinary property purchase, and Mr. Guller. As has been noted, the parties dispute the effects of the initial call, but, at this stage in the proceedings, factual disputes must be resolved in favor of the Plaintiff.

The Defendant does not dispute that, whatever the effects of the initial "hotline" call, the Plaintiff did ultimately give information to law enforcement authorities that was useful in prosecuting Mr. Guller and that assisted in recovery of a certain amount of "the missing funds." Loomis has cited no authority, and the undersigned is aware of none, holding that an accessory after the fact to a robbery—now a convicted "money launderer"—may not be considered a "perpetrator." Furthermore, the Plaintiff also alleges that she provided detailed, unique, and damning information about the Chambers, who were clearly accomplices to the robbery and who have since been convicted and received lengthy sentences.

In short, the Plaintiff has sufficiently pled that Loomis made a reward offer, which she accepted by her active role in the capture of perpetrators and recovery of funds. Accordingly, as to her breach of contract claim, the Plaintiff has stated a claim upon which relief can be granted, and therefore, as to that claim, the Defendant's motion for judgment on the pleadings must be denied.

### C. *Unfair and Deceptive Trade Practices Claim*

■ N.C.Gen.Stat. § 75–1.1(a) provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." The question of what constitutes an unfair or deceptive trade practice is an issue of law. *See L.C. Williams Oil Company, Inc. v. Exxon Corp.,* 625 F.Supp. 477, 482 (M.D.N.C.1985); *and Eastover Ridge, L.L.C. v. Metric Constructors, Inc.,* —— N.C.App. ——, ——, 533 S.E.2d 827, 830 (2000).

■ "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers ... [and] is deceptive if it has the capacity or tendency to deceive." *Marshall v. Miller,* 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). *Accord Warfield v. Hicks,* 91 N.C.App. 1, 8, 370 S.E.2d 689, 693, *disc. review denied,* 323 N.C. 629, 374 S.E.2d 602 (1988).

■ However, "[i]t is well recognized ... that actions for unfair or deceptive trade practices are distinct from actions for breach of contract, and that a mere breach of contract, even if intentional, is *not* sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75–1.1." *Branch Banking and Trust Co. v. Thompson,* 107 N.C.App. 53, 62, 418 S.E.2d 694, 700, *disc. review denied,* 332 N.C. 482, 421 S.E.2d 350 (1992) (emphasis added), *citing, Bartolomeo v. S.B. Thomas, Inc.,* 889 F.2d 530, 535 (4th Cir.1989). *Accord Allied Distributors, Inc. v. Latrobe Brewing Co.,* 847 F.Supp. 376, 379 (E.D.N.C.1993); *Eastover Ridge,* —— N.C.App. at ——, 533 S.E.2d at 833; *and Mosley & Mosley Builders, Inc. v. Landin Ltd.,* 97 N.C.App. 511, 518, 389 S.E.2d 576, 580, *disc. review denied,* 326 N.C. 801, 393 S.E.2d 898 (1990).

■ In order to state a claim for unfair and deceptive trade practices, the Plaintiff must plead "substantial aggravating circumstances attending the breach, which is unlikely ... since [breach of contract] ... claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." *Broussard v. Meineke Discount Muffler Shops,* 155 F.3d 331, 347 (4th Cir. 1998), *citing, Strum v. Exxon Co.,* 15 F.3d 327, 333 (4th Cir.1994). *Accord Eastover Ridge,* —— N.C.App. at ——, 533 S.E.2d at 833; *and Thompson,* 107 N.C.App. at 62, 418 S.E.2d at 700.

In a factually similar case, the North Carolina Court of Appeals recently rejected an unfair and deceptive trade practices claim in what it concluded was really a breach of contract case. The Court explained:

> [P]laintiff's complaint does not allege any aggravating circumstances. Plaintiff merely contends that defendants engaged in unfair and deceptive business practices by breaching its contract in failing to award him a truck. We conclude that these facts do not present aggravating circumstances surrounding defendant's breach of contract and are insufficient to raise a claim of unfair and deceptive practices pursuant to G.S. § 75–1.1.

*Jones v. Capitol Broadcasting Co., Inc.,* 128 N.C.App. 271, 276, 495 S.E.2d 172, 175–76 (1998).

■ The Complaint in this case, even in the light most favorable to the Plaintiff, establishes, at most, that Loomis breached a unilateral contract by refusing to pay a promised reward. There is no allegation as to what action Loomis took—either in making the reward offer or refusing to pay the reward—that was either "unfair" or "deceptive" to potential "consumers" of the reward offer. In short, there has been no factual showing of "substantial aggravating circumstances attendant to" Loomis' refusal to pay a reward to the Plaintiff. Accordingly, as to the unfair and deceptive trade practices claim, the Defendant's motion will be granted.

## III. *ORDER*

**NOW THEREFORE, IT IS ORDERED:**

1. Defendant's "Motion for Judgment on the Pleadings" (document # 7) is **GRANTED** as to Plaintiff's Second Claim for Relief (Unfair and Deceptive Trade Practices), and is **DENIED** as to Plaintiff's First Claim for Relief (Breach of Contract).

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.