JOSEPH MICHAEL GUARASCIO, Plaintiff v. NEW HANOVER HEALTH NETWORK, INC., d/b/a NEW HANOVER REGIONAL MEDICAL CENTER, NEW HANOVER REGIONAL MEDICAL CENTER and BILL CREECH, Defendants

No. COA03-492

(Filed 2 March 2004)

**Employer and Employee— breach of contract—employment manual—failure to state a claim—unilateral contract theory**

The trial court did not err in a wrongful discharge case by dismissing plaintiff former employee's breach of contract claim under N.C.G.S. § 1A-1, Rule 12(b)(6) for failure to state a claim upon which relief can be granted, because: (1) plaintiff did not

have a contract for a definite period of employment and was therefore an at-will employee; (2) the complaint did not contain any allegations that the terms of defendant company's code of conduct indicated that it was expressly included in and therefore became part of plaintiff's employment contract, or that the employment manual was incorporated into the employment contract by virtue of a signature required at the time of hiring; and (3) the Court of Appeals has already concluded that a unilateral contract analysis will not be applied to the issue of wrongful discharge since it would in effect require the abandonment of the at-will doctrine which is the law in North Carolina.

Appeal by plaintiff from order dated 12 November 2002 by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 29 January 2004.

*Waller, Stroud, Stewart & Araneda, LLP, by W. Randall Stroud, for plaintiff-appellant.*

*Hedrick & Morton, L.L.P., by B. Danforth Morton, for defendant-appellees.*

BRYANT, Judge.

Joseph Michael Guarascio (plaintiff) appeals an order dated 12 November 2002 dismissing his breach of contract claim under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Plaintiff filed a complaint dated 15 September 2001 against his former employer New Hanover Health Network, Inc. d/b/a New Hanover Regional Medical Center (NHRMC) and Bill Creech, NHRMC's Chief of Special Police Services, (collectively defendants) for breach of contract, defamation per se, tortious interference with contract, and punitive damages. In an amended complaint filed 13 December 2001, plaintiff added New Hanover Regional Medical Center as an additional defendant. With respect to plaintiff's breach of contract claim, the complaint alleged that plaintiff was employed from 6 July 1998 through 8 November 1999[1] as an officer for NHRMC's Special Police Services. Having joined NHRMC with an exemplary record from the New York City Police Department, plain-

---

1. Although the complaint lists the date of termination as "November 8, 2001," subsequent factual allegations establish that the date of termination was in 1999. Consequently, the 2001 designation is merely a typographical error.

tiff "was promoted in rank from officer to sergeant faster than any other employee of the special police force." Following plaintiff's promotion to sergeant, he discovered that a police supervisor was falsifying time and attendance records and that Chief Creech sanctioned this conduct. Plaintiff met with a NHRMC human resource representative on 27 August 1999 to discuss his discoveries regarding the police supervisor. Thereafter, the police supervisor and Chief Creech became aware of plaintiff's probing into the attendance records. At the request of the police supervisor, plaintiff was subsequently investigated based on his participation in an automobile search. Plaintiff was suspended from duty following this investigation even though no other police officer, including the officer who actually conducted the search, was either suspended or reprimanded. Soon thereafter, plaintiff was asked by Chief Creech to prepare statements on: (1) the time and attendance records of the police supervisor and (2) allegations that plaintiff had disseminated information from a departmental survey. On 2 November 1999, plaintiff received his first and only employee disciplinary warning, which terminated his employment with NHRMC. When plaintiff was afforded an option on 8 November 1999 to sign a resignation letter instead, he did.

The complaint further stated:

13. That, as part of plaintiff's employment with defendant hospital, plaintiff was given training in compliance with corporate procedures. At the training, plaintiff was given a written version of the NHRMC Code of Conduct which, among other things, establishes guidelines for the relationship between the defendant hospital and its employees.

. . . .

19. That the NHRMC Code of Conduct says that NHRMC "will not tolerate the theft of property" nor "embezzlement of money."

20. That the NHRMC Code of Conduct commands that "[a]ny employee who has knowledge of an actual or potential violation of the law, regulation, policy or procedure, and/or the NHRMC Code of Conduct should report the matter to a supervisor." Alternative reporting means exist in the event the violation observed directly involves a supervisor.

21. That the NHRMC Code of Conduct further commands, in bold print, that "[a]n employee who . . . engages in, causes, or by

GUARASCIO v. NEW HANOVER HEALTH NETWORK, INC.

[163 N.C. App. 160 (2004)]

inaction or inattention tolerates or condones any illegal or unethical conduct has automatically violated NHRMC's Code of Conduct and will be subject to disciplinary action, up to and including discharge. Every employee of the medical center has an obligation to report illegal or unethical conduct by another employee."

22. That in a letter to NHRMC employees printed on the first page of the NHRMC Code of Conduct, William K. Atkinson, President of the defendant corporation, wrote, "If you observe violations of this Code of Conduct, you have an obligation to report them. I can assure you that there will be no retaliation or retribution against anyone for reporting problems . . . ."

Based on these factual allegations, plaintiff asserted a breach of contract claim based on retaliatory termination of his employment contract in violation of the NHRMC Code of Conduct, which plaintiff claimed to be part of his employment contract with NHRMC, and in violation of defendants' duty of good faith and fair dealing.[2]

Defendants filed a motion to dismiss plaintiff's breach of contract claim under Rule 12(b)(6), which the trial court granted in an order dated 12 November 2002. Thereafter, plaintiff filed a voluntary dismissal without prejudice with respect to his remaining claims of defamation per se, tortious interference with contract, and punitive damages and appealed the dismissal of the breach of contract claim.

The dispositive issue is whether the NHRMC Code of Conduct, an employment manual, was part of plaintiff's contract for employment with NHRMC.[3]

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint by determining "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory."

2. North Carolina does not recognize a claim for wrongful discharge based on an employer's bad faith. Charles E. Daye and Mark W. Morris, *North Carolina Law of Torts* § 12.20, at 116-17 (2d ed. 1999) (citing *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 359-60, 416 S.E.2d 166, 173 (1992)). In any event, such a claim would fall under tort, not contract law. *See generally Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989); *Hill v. Medford*, 158 N.C. App. 618, 623-27, 582 S.E.2d 325, 328-31 (Martin, J., dissenting) (discussing tort of wrongful discharge), *rev'd*, 357 N.C. 650, 588 S.E.2d 467 (2003) (per curiam).

3. We note that plaintiff's first claim for relief in his complaint is for breach of contract only. Plaintiff does not state a claim for the tort of wrongful discharge.

*Lynn v. Overlook Dev.*, 328 N.C. 689, 692, 403 S.E.2d 469, 471 (1991). A Rule 12(b)(6) motion to dismiss for failure to state a claim should not be granted "unless it appears to a certainty that [the] plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

### Employment Manual

North Carolina courts have consistently held that in the absence of some form of contractual agreement between an employer and employee creating a definite period of employment, "the employment is presumed to be an 'at-will' employment, terminable at the will of either party, irrespective of the quality of the performance by the other party." *Harris v. Duke Power Co.*, 319 N.C. 627, 629, 356 S.E.2d 357, 359 (1987). Thus, an at-will "employee states no cause of action for breach of contract by alleging that he has been discharged without just cause." *Id.* In addition, our courts have held that " 'unilaterally promulgated employment manuals or policies do not become part of the employment contract unless expressly included in it,' " *Rucker v. First Union Nat. Bank*, 98 N.C. App. 100, 102, 389 S.E.2d 622, 624 (1990) (quoting *Rosby v. General Baptist State Convention*, 91 N.C. App. 77, 81, 370 S.E.2d 605, 608 (1988)), or in the case of local governments, they are enacted as ordinances, *Wuchte v. McNeil*, 130 N.C. App. 738, 741, 505 S.E.2d 142, 144 (1998).

The only North Carolina case that has upheld a breach of contract claim based on an employee manual is *Trought v. Richardson*, 78 N.C. App. 758, 338 S.E.2d 617 (1986). In *Trought*, this Court held that the plaintiff had properly stated a claim for breach of contract based on her allegation that the employer's personnel policy manual was part of her employment contract where her complaint further alleged that: (1) she was required to sign a statement at the time of hiring indicating she had read the manual (2) providing she could be discharged "for cause" only and stating that certain procedures had to be followed in order for an employee to be discharged, and (3) she was discharged without cause and without the benefit of the personnel policy manual procedures. *Id.* at 762, 338 S.E.2d at 619-20 (reversing the trial court's dismissal under Rule 12(b)(6) of the plaintiff's breach of contract action). Our Supreme Court has since limited the rule in *Trought* to its narrow facts. *See Harris*, 319 N.C. at 631, 356 S.E.2d at 360.

In the case *sub judice*, plaintiff did not have a contract for a definite period of employment and was therefore an at-will employee. Furthermore, the complaint contains no allegations that the terms of the NHRMC Code of Conduct indicated it was "expressly included in" and therefore became part of plaintiff's employment contract, or that the employment manual was incorporated into the employment contract by virtue of a signature requirement at the time of hiring. *Rucker*, 98 N.C. App. at 102-03, 389 S.E.2d at 624-25 (distinguishing *Trought*). Thus, as an employee at will, plaintiff's breach of contract claim, based on the mere conclusory allegation, without supporting factual allegations, that the NHRMC Code of Conduct was part of plaintiff's employment contract, fails. *See Miller v. Rose*, 138 N.C. App. 582, 592, 532 S.E.2d 228, 235 (2000) (in ruling on a Rule 12(b)(6) motion to dismiss, "[l]egal conclusions . . . are not entitled to a presumption of truth").

## *Unilateral Contract*

Plaintiff contends in the alternative that the employment handbook created an independent unilateral contract between him and NHRMC. Plaintiff argues he is entitled to recover for defendants' breach of that unilateral contract, for which he gave consideration by reporting the time and attendance record discrepancies. We disagree.

North Carolina has recognized a unilateral contract theory with respect to certain benefits relating to employment. *See White v. Hugh Chatham Mem'l Hosp. Inc.*, 97 N.C. App. 130, 387 S.E.2d 80 (1990) (where the court accepted legal theory of contractual entitlement to disability payments); *Welsh v. Northern Telecom, Inc.*, 85 N.C. App. 281, 354 S.E.2d 746 (1987) (where the court acknowledged legal claim to vacation and retirement benefits); *Brooks v. Carolina Tel.*, 56 N.C. App. 801, 290 S.E.2d 370 (1982) (finding severance payments part of a unilateral contract). In *Rucker*, however, this Court declined "to apply a unilateral contract analysis to the issue of wrongful discharge." *Rucker*, 98 N.C. App. at 103, 389 S.E.2d at 625. The Court reasoned that: "[T]o apply a unilateral contract analysis to the situation before us would, in effect, require us to abandon the 'at-will' doctrine which is the law in this State. This we cannot do." *Id.* As we are bound by prior rulings of this Court, plaintiff's argument is without merit. *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same

court is bound by that precedent, unless it has been overturned by a higher court").

Affirmed.

Judges TIMMONS-GOODSON and ELMORE concur.