HORNE v. CUMBERLAND CNTY. HOSP. SYS., INC.

[228 N.C. App. 142 (2013)]

AMY M. HORNE, Plaintiff,

v.

CUMBERLAND COUNTY HOSPITAL SYSTEM, INC., d/b/a CAPE FEAR VALLEY
HEALTH SYSTEM, a/k/a CAPE FEAR VALLEY MEDICAL CENTER, Defendant

No. COA12-1276

Filed 2 July 2013

**Employer and Employee—termination from employment—failure to state claim—claims properly dismissed**

The trial court did not err in an action based on plaintiff's termination from her employment by granting defendant's motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Plaintiff's failure to include in her complaint a specific no-discharge-except-for-cause allegation was fatal to her breach of contract claim; plaintiff's complaint failed to sufficiently allege that her termination violated the public policy of this State and failed to sufficiently allege facts establishing the first and third elements of negligent infliction of emotional distress; and plaintiff's claim for defamation was barred by the statute of limitations. As the trial court properly dismissed all of plaintiff's substantive claims, she was precluded from recovering punitive damages and her claim for punitive damages was properly dismissed.

Appeal by plaintiff from order entered 1 August 2012 by Judge Douglas B. Sasser in Cumberland County Superior Court. Heard in the Court of Appeals 12 March 2013.

*Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner, for plaintiff-appellant.*

*K&L Gates LLP, by Amie Flowers Carmack and Brian C. Fork, for defendant-appellee.*

DAVIS, Judge.

Amy M. Horne ("plaintiff") appeals from the trial court's order dismissing her complaint against Cumberland County Hospital System, Inc. ("CCHS") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. After careful review, we affirm.

## Factual Background

We have summarized the pertinent facts below using plaintiff's own statements from her complaint, which we treat as true in reviewing the trial court's order dismissing her complaint under Rule 12(b)(6). *See, e.g., Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 325, 626 S.E.2d 263, 266 (2006) ("When reviewing a complaint dismissed under Rule 12(b)(6), we treat a plaintiff's factual allegations as true.").

Plaintiff began working part time for CCHS in April 2001 as a registered radiologic technologist. In May 2001, she switched to full-time employment in the same position. On 30 December 2010, plaintiff was hired as a CT technologist. In early February 2011, plaintiff attended an employee orientation, where she acknowledged in writing that she had received a copy of CCHS's employee handbook, which provided certain grievance procedures for employees.

On 16 March 2011, an incident occurred during a procedure that resulted in the wrong scan being performed on a patient. Although plaintiff did not perform the scan, a student intern involved with the procedure wrote plaintiff's initials on the form memorializing the procedure. On 21 March 2011, plaintiff was "written up" by her supervisor as a result of this incident. The write-up cited the policy violation as being a "failure of the employee to perform his/her assigned tasks to include neglect, carelessness in duty, or failure to adequately document work activities."

On 22 March 2011, plaintiff received a second write-up. Plaintiff's supervisor expressed concerns about " 'issues noticed during orientation/probation period' relating to being a team player, and doing more paperwork than physical work, taking smoke breaks, poor organizational skills regarding workflow and prioritizing work . . . ." Plaintiff was written up a third time on 29 March 2011 for allegedly "walk[ing] out of a procedure . . . ." A final write-up occurred on 29 March 2011 for "a statement that [plaintiff] allegedly said during the middle of a procedure . . . ."

Plaintiff's employment with CCHS was terminated on 18 April 2011. The documentation evidencing her dismissal referenced "four incidents of scanning exams incorrectly, alleged delay in patient care, scanning the wrong anatomy, alleged complaint on a patient survey, peer reviews of which [plaintiff] knew nothing, and alleged complaints from co-workers." Plaintiff's supervisor told her that she was not allowed to contest any of the incidents contained in her personnel file due to the fact that she was in her probationary period at the time. After her termination, plaintiff applied for, and received, unemployment benefits.

On 17 April 2012, plaintiff filed a complaint against CCHS, asserting four causes of action: (1) breach of contract; (2) wrongful discharge in violation of public policy; (3) negligent infliction of emotional distress; and (4) defamation. In addition to compensatory damages, plaintiff sought punitive damages, costs, interest, and attorney's fees. On 15 June 2012, CCHS filed a motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of North Carolina Rules of Civil Procedure for failure to state a claim upon which relief may be granted. After conducting a hearing, the trial court entered an order on 1 August 2012 granting the motion and dismissing plaintiff's complaint with prejudice. Plaintiff timely appealed to this Court.

## Analysis

Plaintiff's sole argument on appeal is that the trial court erred in dismissing her complaint pursuant to Rule 12(b)(6). "When a party files a motion to dismiss pursuant to Rule 12(b)(6), the question for the court is whether the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Enoch v. Inman*, 164 N.C. App. 415, 417, 596 S.E.2d 361, 363 (2004). "A complaint may be dismissed pursuant to Rule 12(b)(6) where (1) the complaint on its face reveals that no law supports a plaintiff's claim, (2) the complaint on its face reveals the absence of facts sufficient to make a good claim, or (3) the complaint discloses some fact that necessarily defeats a plaintiff's claim." *Toomer v. Garrett*, 155 N.C. App. 462, 468, 574 S.E.2d 76, 83 (2002), *appeal dismissed and disc. review denied*, 357 N.C. 66, 579 S.E.2d 576 (2003). An appellate court reviews *de novo* a trial court's dismissal of an action under Rule 12(b)(6). *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003).

## I. Breach of Contract Claim

Initially, plaintiff argues that the trial court erred in dismissing her breach of contract claim. Under North Carolina law, unless the employer and employee have entered into a contract specifying a definite term of employment, the employment relationship "is presumed to be terminable at the will of either party without regard to the quality of performance of either party." *Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997). Plaintiff does not allege that a contract specifying a definite period of employment existed between her and CCHS. Instead, she asserts that certain contractual rights regarding termination and grievance procedures arose out of CCHS's "Employee Handbook." CCHS's failure to follow those

procedures in terminating her employment, she argues, constitutes a breach of contract. We disagree.

Plaintiff relies entirely on *Trought v. Richardson*, 78 N.C. App. 758, 338 S.E.2d 617, *disc. review denied*, 316 N.C. 557, 344 S.E.2d 18 (1986), with regard to her breach of contract claim. In *Trought*, this Court reversed the trial court's dismissal of the plaintiff's wrongful discharge claim, which was premised on the plaintiff's assertion that her employer's policy manual had become part of her employment contract. *Id.* at 762, 338 S.E.2d at 620. The plaintiff in *Trought* alleged that (1) the defendant's policy manual provided that employees could be discharged only for cause; (2) when the plaintiff was hired, she was required to sign a statement acknowledging that she had read the policy manual; and (3) she was discharged without cause. *Id.*, 338 S.E.2d at 619-20.

As this Court has recognized, *Trought* is "[t]he only North Carolina case that has upheld a breach of contract claim based on an employee manual . . . ." *Guarascio v. New Hanover Health Network, Inc.*, 163 N.C. App. 160, 164, 592 S.E.2d 612, 614, *disc. review denied*, 358 N.C. 375, 597 S.E.2d 130 (2004). In *Harris v. Duke Power Co.*, 319 N.C. 627, 356 S.E.2d 357 (1987), our Supreme Court "limited the rule in *Trought* to its narrow facts." *Guarascio*, 163 N.C. App. at 164, 592 S.E.2d at 614.

The plaintiff in *Harris* – in contrast to the plaintiff in *Trought* – failed to allege that his employer's procedure manual expressly represented that an employee could be discharged only for cause. *Harris*, 319 N.C. at 631, 356 S.E.2d at 360. In the absence of such an allegation, the Supreme Court held that the plaintiff in *Harris* could not rely on *Trought* in order to survive the defendant's motion to dismiss for failure to state a valid claim for breach of contract. *Id.* at 633, 356 S.E.2d at 360.

As we are bound by our Supreme Court's decision in Harris, we conclude that plaintiff has failed to state a valid claim for breach of contract. Nowhere in plaintiff's complaint does she allege that CCHS's employee handbook provided that an employee could be terminated only for cause. Instead, she merely alleges that, "[a]s part of [CCHS's] employee orientation, [plaintiff] was required to acknowledge in writing the receipt of the Employee Handbook that set forth the grievance procedures that were available to employees of [CCHS]" and that she was likewise "required to acknowledge in writing the receipt of Standards of Performance for Employees." Thus, as in *Harris*, plaintiff's failure to include in her complaint a "specific no-discharge-except-for-cause allegation" is fatal to her claim. *Id.* at 631, 356 S.E.2d at 360. Accordingly, the trial court properly dismissed plaintiff's breach of contract claim.

## II. Wrongful Discharge in Violation of Public Policy Claim

The trial court's dismissal of plaintiff's claim for wrongful discharge in violation of public policy was also correct. Under the employment-at-will doctrine, employees may be discharged for any reason, for no reason at all, or for an irrational or arbitrary reason. *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 446 (1989). However, an exception to this doctrine is that employers are prohibited from discharging employees for reasons that violate the public policy of our State. *Garner v. Rentenbach Constructors Inc.*, 350 N.C. 567, 571, 515 S.E.2d 438, 441 (1999).

Claims for wrongful discharge in violation of public policy have been recognized in circumstances where the employee was terminated: "(1) for refusing to violate the law at the employer[']s request, (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy." *Ridenhour v. Inter'l Bus. Mach. Corp.*, 132 N.C. App. 563, 568-69, 512 S.E.2d 774, 778 (citations omitted), *disc. review denied*, 350 N.C. 595, 537 S.E.2d 481 (1999).

With respect to claims for wrongful termination in violation of public policy, this Court has explained that "notice pleading is not sufficient to withstand a motion to dismiss; instead a claim must be pled with specificity." *Gillis v. Montgomery County Sheriff's Dep't*, 191 N.C. App. 377, 379, 663 S.E.2d 447, 449, *appeal dismissed and disc. review denied*, 362 N.C. 508, 668 S.E.2d 26 (2008). In order to maintain such a claim, therefore, the plaintiff must allege "*specific conduct* by a defendant that violated a *specific expression* of North Carolina public policy . . . ." *Considine v. Compass Grp. USA, Inc.*, 145 N.C. App. 314, 321-22, 551 S.E.2d 179, 184 (emphasis added), *aff'd per curiam*, 354 N.C. 568, 557 S.E.2d 528 (2001).

Plaintiff contends that her complaint sufficiently alleges that her termination violated the public policy of this State in four ways: (1) CCHS violated her constitutional rights to procedural and substantive due process; (2) CCHS failed to comply with its own internal grievance procedures; (3) CCHS breached the covenant of good faith in the employer-employee relationship; and (4) CCHS violated numerous statutory expressions of public policy. We discuss each of these arguments in turn.

### i. Due Process

It is well established that in order for an employee to be entitled to procedural due process protection, the employee must possess

a property interest or right in continued employment with a public employer. *Soles v. City of Raleigh Civil Serv. Comm'n*, 345 N.C. 443, 446, 480 S.E.2d 685, 687 (1997). Because CCHS is a private employer, plaintiff did not have any constitutional protections. *See Teleflex Info. Sys., Inc. v. Arnold*, 132 N.C. App. 689, 693-94, 513 S.E.2d 85, 88 (1999) (rejecting plaintiff's arguments that his discharge violated his constitutional rights because such rights were not "implicated in a dispute between an employee and a private employer").

Moreover, this Court has expressly held that an at-will employee, such as plaintiff, even if a government employee, "does not have a constitutionally protected right to continued employment and does not have the benefit of the protections of procedural due process." *Wuchte v. McNeil*, 130 N.C. App. 738, 740, 505 S.E.2d 142, 144 (1998). As such, plaintiff cannot rely on procedural due process principles to support her wrongful discharge claim.

With regard to her substantive due process claim, plaintiff, in her brief, fails to cite any legal authority in support of her contention on this issue. We, therefore, deem this argument abandoned on appeal pursuant to Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure.

### ii. Failure to Follow Internal Grievance Policies

Plaintiff's second ground for her wrongful discharge claim is that CCHS violated its own internal policies by preventing plaintiff from using CCHS's grievance procedures to (1) challenge her termination; or (2) pursue her complaints against her supervisor. Plaintiff, however, failed to identify in her complaint any express public policy violated by a private employer's failure to comply with its own internal procedures. The failure to include such an allegation warrants dismissal of plaintiff's claim. *See Considine*, 145 N.C. App. at 319, 551 S.E.2d at 183 (affirming dismissal of claim for wrongful discharge in violation of public policy where "[p]laintiff's complaint d[id] not assert that defendant's . . . conduct violated any public policy that has been established by our state's statutes or constitution").

Moreover, plaintiff's assertion that CCHS failed to follow the grievance procedures set out in its policy handbook is not the same as an allegation that she was *terminated* for a reason that violates the public policy of our State – the essence of a claim for wrongful discharge in violation of public policy. *See Garner*, 350 N.C. at 572, 515 S.E.2d at 441 ("In order to support a claim for wrongful discharge of an at-will employee [in violation of public policy], the termination itself must be motivated by an unlawful reason or purpose that is against public policy.").

### iii. Bad Faith

Plaintiff's third basis for her wrongful discharge claim is that CCHS terminated her employment in bad faith. However, our Supreme Court has made clear that North Carolina "d[oes] not recognize a separate claim for wrongful discharge in bad faith." *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 360, 416 S.E.2d 166, 173 (1992). Accordingly, this claim was properly dismissed.

### iv. Statutory Violations

Finally, plaintiff makes the blanket assertion that her discharge contravenes "important" public policy statements expressed in North Carolina's: (1) "unemployment compensation laws"; (2) "labor relations laws"; (3) "'[b]lacklisting' and '[j]ob [r]eferences' laws"; and (4) "the compliance and good business practices laws embodied within the corporate laws . . . ."

However, in making these allegations, plaintiff merely refers generally to various topics addressed in the North Carolina General Statutes without citing any specific statutory provisions. Such oblique references are insufficient to put CCHS "on notice of what public policy [its] termination of plaintiff violated." *Gillis*, 191 N.C. App. at 381, 663 S.E.2d at 450; *accord Considine*, 145 N.C. App. at 321-22, 551 S.E.2d at 184 (affirming dismissal of wrongful discharge claim based on caselaw requiring allegations of "specific conduct by a defendant that violated a *specific* expression of North Carolina public policy") (emphasis added). Given the absence of such allegations, we conclude that the trial court properly dismissed plaintiff's claim for wrongful discharge in violation of public policy pursuant to Rule 12(b)(6).

## III. Negligent Infliction of Emotional Distress Claim

Plaintiff also contends that the trial court erred in dismissing her claim for negligent infliction of emotional distress ("NIED"). In order to state a claim for NIED, a plaintiff must allege that (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff to suffer severe emotional distress; and (3) the conduct did, in fact, cause the plaintiff to suffer severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). Plaintiff's complaint fails to sufficiently allege facts establishing the first and third elements.

The first element of an NIED claim requires allegations that the "defendant failed to exercise due care in the performance of some legal duty owed to [the] plaintiff under the circumstances[.]" *Guthrie*

*v. Conroy,* 152 N.C. App. 15, 25, 567 S.E.2d 403, 410-11 (2002). Nowhere, however, in her complaint does plaintiff reference any duty owed to her by CCHS. The failure to allege such a duty owed by the defendant to the plaintiff is fatal to an NIED claim on a motion to dismiss. See id., 567 S.E.2d at 411 ("[P]laintiff alleges no duty that [defendant] owed plaintiff . . . . Absent a breach of duty of care, plaintiff's suit against [defendant] for NIED cannot be maintained.").

Moreover, plaintiff's NIED claim is premised on allegations of intentional – rather than negligent – conduct. Beyond the conclusory assertion that "[CCHS] negligently engaged in the aforementioned conduct against [plaintiff]," plaintiff's complaint recounts only *intentional* conduct on the part of CCHS. Indeed, plaintiff alleges: "[CCHS's] action[] toward [plaintiff] constitutes extreme and outrageous conduct which was *intended* to – and did in fact – cause her severe emotional distress." (Emphasis added.) The complaint elsewhere alleges that plaintiff became a "target" of her supervisor's "deliberate, vicious, malicious, and outrageous campaign and conspiracy of harassment . . . ."

Allegations of intentional conduct, such as these, even when construed liberally on a motion to dismiss, cannot satisfy the negligence element of an NIED claim. *See Sheaffer v. County of Chatham,* 337 F.Supp.2d 709, 734 (M.D.N.C. 2004) ("Even taking all these allegations as true, they demonstrate intentional acts for which Plaintiff has made other claims; they do not show negligent acts required for a claim of negligent infliction of emotional distress."). Plaintiff, therefore, has failed to properly plead an element essential to her NIED claim.

In addition, in order to plead a valid NIED claim, a plaintiff must allege severe emotional distress, which has been defined as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson,* 327 N.C. at 304, 395 S.E.2d at 97. Here, the complaint merely asserts that CCHS's actions were the "direct and proximate cause of [plaintiff]'s severe emotional distress" – without any factual allegations regarding the type, manner, or degree of severe emotional distress she claims to have experienced. In the absence of such allegations, plaintiff's complaint fails to state a valid claim for NIED. *See Holleman v. Aiken,* 193 N.C. App. 484, 502, 668 S.E.2d 579, 591 (2008) (affirming dismissal of NIED claims where complaint did "not make any specific factual allegations as to [plaintiff's] 'severe emotional distress' ").

## IV. Defamation Claim

Plaintiff's final argument is that the trial court improperly dismissed her claim for defamation. We conclude, however, that this claim is barred by the statute of limitations.

Pursuant to N.C. Gen. Stat. § 1-54(3) (2011), a defamation action must be commenced within one year from the date the action accrues, which is the date of the publication of the defamatory words – irrespective of the date of discovery by the plaintiff. *Philips v. Pitt County Mem'l Hosp. Inc.*, __ N.C. App. __, __, 731 S.E.2d 462, 472, *appeal dismissed and disc. review denied*, __ N.C. __, 734 S.E.2d 862-63 (2012). As plaintiff's complaint was filed on 17 April 2012, a defamation claim predicated on allegedly defamatory statements made prior to 17 April 2011 would be time-barred.

Plaintiff's complaint fails to identify the allegedly defamatory remarks made by CCHS or to specify when they were made. This lack of specificity is, by itself, a sufficient basis to support the dismissal of plaintiff's defamation claim. *See Stutts v. Duke Power Co.*, 47 N.C. App. 76, 84, 266 S.E.2d 861, 866 (1980) (holding that in order to withstand motion to dismiss defamation claim, "the words attributed to defendant [must] be alleged 'substantially' *in haec verba*, or with sufficient particularity to enable the court to determine whether the statement was defamatory"). However, even assuming – under a liberal construction of the complaint – that plaintiff is referring to the three instances where she was "written up" by her supervisor, which occurred on 21, 22, and 29 March 2011 and further assuming, without deciding, that these write-ups could be the subject of a defamation claim, all three write-ups occurred prior to 17 April 2011. Therefore, they cannot serve as the basis for plaintiff's defamation claim. *See Philips*, __ N.C. App. at __, 731 S.E.2d at 473 ("[B]ecause Plaintiff did not assert this claim until more than two years following [defendant]'s allegedly defamatory statement, this claim is barred by the one-year statute of limitations."). Accordingly, the trial court did not err in dismissing plaintiff's defamation claim.

## V. Punitive Damages Claim

As we have concluded that the trial court properly dismissed all of plaintiff's substantive claims, she is precluded from recovering punitive damages since, "[a]s a rule[,] you cannot have a cause of action for punitive damages by itself." *Oestreicher v. Am. Nat'l Stores, Inc.*, 290 N.C. 118, 134, 225 S.E.2d 797, 808 (1976). Consequently, plaintiff's claim for punitive damages was properly dismissed as well. *See White v. Cross Sales & Eng'g Co.*, 177 N.C. App. 765, 771, 629 S.E.2d 898, 902 (2006)

IN RE S.D.W.

[228 N.C. App. 151 (2013)]

(holding trial court properly dismissed punitive damages claim where underlying substantive claim did not survive summary judgment).

## Conclusion

For the reasons stated above, we affirm the trial court's order dismissing plaintiff's complaint.

AFFIRMED.

Judges McGEE and GEER concur.