THOMASINE B. McALLISTER AND EDWARD McALLISTER v. KHIE SEM HA, M.D.

No. 298PA97

(Filed 6 March 1998)

**1. Abortion; Prenatal or Birth-Related Injuries and Offenses § 24 (NCI4th)— medical malpractice—wrongful pregnancy—12(b)(6) dismissal—erroneous**

The trial court erred by granting defendant's motion to dismiss a medical malpractice claim under N.C.G.S. § 1A-1, Rule 12(b)(6) where the claim arose from defendant's failure to inform plaintiffs of the results of a test for sickle-cell genetic traits before plaintiff-wife became pregnant with their second child. Although defendant contended that plaintiffs' claim is for wrongful birth because they are seeking damages in connection with the birth of their child and that the claim is thus not actionable under *Azzolino v. Dingfelder*, 315 N.C. 103, plaintiffs alleged that they were not able to make an informed choice regarding whether to conceive again as a result of defendant's negligence and did not allege that their son's very existence was a compensable injury, as did the plaintiffs in *Azzolino*. Whether defendant's alleged negligence actually caused plaintiffs any injury is to be resolved by the trier of fact.

**2. Negligence § 6 (NCI4th)— sickle-cell genetic testing—failure to convey results—subsequent pregnancy—negligent infliction of emotional distress—claim sufficiently stated**

The trial court erred by dismissing under N.C.G.S. § 1A-1, Rule 12(b)(6) plaintiffs' claim for negligent infliction of emotional distress arising from defendant's failure to inform them of the results of genetic tests for sickle-cell disease where plaintiffs alleged that plaintiff-wife became pregnant and gave birth to a child with sickle-cell disease as a result of defendant's negligence and that defendant's negligence caused them extreme mental and

emotional distress, specifically referring to plaintiff-wife's fears regarding her son's health and her resultant sleeplessness. Plaintiff's allegations, while sparse, are sufficient to state a claim; whether defendant's alleged negligence caused either of the plaintiffs to suffer severe emotional distress is a question for the trier of fact.

**3. Abortion; Prenatal or Birth-Related Injuries and Offenses § 24 (NCI4th)— wrongful pregnancy—sickle-cell disease—damages**

The Court of Appeals incorrectly concluded that plaintiffs in a medical malpractice claim could seek a version of child-rearing expenses where plaintiffs attempted to distinguish their claim from *Jackson v. Bumgardner*, 318 N.C. 172, by arguing that they seek damages only for the extraordinary care involved in the treatment of their son's sickle-cell disease as opposed to all expenses associated with rearing a child. Such extraordinary costs are simply a part of child-rearing expenses for parents rearing an impaired child; furthermore, the complaint in this case is similar to the complaint in *Jackson*.

**4. Appeal and Error § 372 (NCI4th)— service of proposed record—extension of time granted by Court of Appeals—no abuse of discretion**

The Court of Appeals did not abuse its discretion by granting plaintiffs' motion for an extension of time to serve the proposed record on appeal and deeming the proposed record timely served where plaintiffs served the record 78 days after giving notice of appeal and, on the same date, filed the motion seeking an extension of time.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 126 N.C. App. 326, 485 S.E.2d 84 (1997), reversing an order allowing defendant's motion to dismiss entered 22 March 1996 by Britt (Joe Freeman), J., in Superior Court, Robeson County, and remanding for further proceedings. Heard in the Supreme Court 9 February 1998.

*Britt & Britt, P.L.L.C., by William S. Britt, for plaintiff-appellees.*

*Cranfill, Sumner & Hartzog, L.L.P., by Gregory M. Kash and Leigh Ann Garner, for defendant-appellant.*

*Patterson, Dilthey, Clay & Bryson, L.L.P., by Robert M. Clay and Charles George, on behalf of N.C. Association of Defense Attorneys, amicus curiae.*

WHICHARD, Justice.

Plaintiffs brought this action for medical malpractice and negligent infliction of emotional distress arising from defendant's alleged failure to inform plaintiffs of the results of certain blood tests he performed. The trial court granted defendant's motion to dismiss the complaint pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). The Court of Appeals reversed, and this Court granted defendant's petition for discretionary review.

The facts set forth herein are taken from the allegations of the complaint, which, in deciding a motion to dismiss, must be taken as true. *See Forbis v. Honeycutt*, 301 N.C. 699, 701, 273 S.E.2d 240, 241 (1981).

The complaint alleges that defendant is a duly licensed physician practicing family medicine. Plaintiffs, husband and wife, had a baby boy on 8 May 1991. In June 1991, plaintiffs received a letter from the State Health Department advising them that they needed to be tested for sickle-cell disease because of genetic traits carried by plaintiff-wife which their son could have inherited.

Plaintiffs went to the medical offices of defendant, where blood was drawn and sent to the State Laboratory of Public Health. Defendant told plaintiffs that if there was anything to be concerned about, he would call them, and that if they did not hear from him, there was no cause for concern. Plaintiffs never heard from defendant on the test results, even though plaintiff-wife visited defendant for minor ailments approximately four times between June 1991 and September 1993.

In September 1993, plaintiff-wife became pregnant with plaintiffs' second child. Plaintiffs' second son was born on 27 May 1994. In June 1994, plaintiffs learned that their second son had Hemoglobin O Arab, a sickle-cell disease. Plaintiffs further learned that the results of the 1991 blood tests showed that plaintiff-husband carried the O Arab factor sickle cell. Plaintiffs allege that the traits carried by plaintiff-wife combined with the factor carried by plaintiff-husband put the couple at a one-in-four risk of bearing a child with sickle-cell disease.

McALLISTER v. HA

[347 N.C. 638 (1998)]

Plaintiffs have had to carry their child to Duke Medical Center for testing and procedures, and he has been placed on daily medication until he reaches five years of age. Plaintiff-wife has been unable to sleep through the night because of her fear that her child would stop breathing or would have other problems. This lack of sleep has prevented plaintiff-wife from attaining peak performance in her job as a school teacher. Both plaintiffs have missed work because of the requirements of caring for their child.

The complaint further alleges defendant was negligent in one or more of the following respects: (1) failure to communicate the results of the blood tests to plaintiffs; (2) failure to have adequate procedural safeguards to ensure that test results were properly communicated to patients; (3) breach of "the appropriate standards of practice for physicians practicing in Red Springs, or similar communities in 1991, with the same or similar training [and] experience as Defendant"; (4) failure "to use his best medical judgment"; and (5) failure "to use reasonable care and diligence in the application of his knowledge and skill to the plaintiffs' care and treatment."

Plaintiffs further allege that because of defendant's negligence, they never received any genetic counseling to prepare them for being the parents of a child with sickle-cell disease and were deprived of the opportunity to make an informed decision regarding whether to have another child. The complaint also alleges that defendant's actions "amounted to extreme and outrageous conduct that amounts to a wanton and reckless disregard of the rights and safety of the Plaintiffs." Finally, plaintiffs allege that defendant's negligence caused them "extreme mental and emotional distress, and financial loss."

This case is before the Court on a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). "A complaint is sufficient to withstand a motion to dismiss where no insurmountable bar to recovery on the claim alleged appears on the face of the complaint and where allegations contained therein are sufficient to give a defendant notice of the nature and basis of plaintiffs' claim so as to enable him to answer and prepare for trial." *Forbis*, 301 N.C. at 701, 273 S.E.2d at 241. Further, "when the allegations in the complaint give sufficient notice of the wrong complained of[,] an incorrect choice of legal theory should not result in dismissal of the claim if the allegations are sufficient to state a claim under some legal theory." *Stanback v. Stanback*, 297 N.C. 181,

202, 254 S.E.2d 611, 625 (1979). "A complaint may be dismissed pursuant to Rule 12(b)(6) if no law exists to support the claim made, if sufficient facts to make out a good claim are absent, or if facts are disclosed which will necessarily defeat the claim." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990).

Plaintiffs here allege two claims in their complaint, one for medical malpractice and the other for negligent infliction of emotional distress. We address each in turn in light of the above standard of review.

[1] The scope of a physician's duty to his patient, the basis of any medical malpractice claim, was succinctly described by Justice Higgins in *Hunt v. Bradshaw*, 242 N.C. 517, 88 S.E.2d 762 (1955), as follows:

> A physician or surgeon who undertakes to render professional services must meet these requirements: (1) He must possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess; (2) he must exercise reasonable care and diligence in the application of his knowledge and skill to the patient's case; and (3) he must use his best judgment in the treatment and care of his patient. If the physician or surgeon lives up to the foregoing requirements he is not civilly liable for the consequences. If he fails in any one particular, and such failure is the proximate cause of injury and damage, he is liable.

*Id.* at 521-22, 88 S.E.2d at 765 (citations omitted). The requirement has been refined such that the physician is now required to provide care "in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action." N.C.G.S. § 90-21.12 (1997). *See Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986).

Defendant does not argue that plaintiffs have failed to allege sufficient facts to support a medical malpractice claim. Rather, he contends that plaintiffs have stated a claim for a particular type of medical malpractice which is not recognized in North Carolina, a claim generally referred to as "wrongful birth." In *Azzolino v. Dingfelder*, 315 N.C. 103, 337 S.E.2d 528 (1985), *cert. denied*, 479 U.S. 835, 93 L. Ed. 2d 75 (1986), this Court considered a case in which the

plaintiffs alleged that the defendants were negligent in their prenatal care of the plaintiff-mother by failing to properly advise her regarding the availability of amniocentesis and genetic counseling. *Id.* at 105, 337 S.E.2d at 530. The plaintiffs further alleged that had they been properly advised, they would have had amniocentesis performed and would have discovered that their child would suffer from Down's syndrome. The plaintiffs alleged that had they been aware of this outcome, they would have chosen to terminate the pregnancy via abortion. *Id.*

The Court observed that "[t]he jurisdictions which have reached the merits of claims for wrongful birth currently appear to be almost unanimous in their recognition of them when but for the defendants' negligence, the parents would have terminated the defective fetus by abortion." *Id.* at 110, 337 S.E.2d at 533. The Court noted, however, that in order to allow recovery for such claims, courts must hold "that the existence of a human life can constitute an injury cognizable at law." *Id.* at 111, 337 S.E.2d at 534. The Court concluded: "We are unwilling to take any such step because we are unwilling to say that life, even life with severe defects, may ever amount to a legal injury." *Id.*

Defendant argues that the Court's refusal in *Azzolino* to recognize a claim for wrongful birth precludes the claim in this case. Defendant argues that because plaintiffs are seeking damages in connection with the birth of an impaired child, their claim is one for wrongful birth and thus is not actionable. We disagree.

The case of *Jackson v. Bumgardner*, 318 N.C. 172, 347 S.E.2d 743, is instructive in the analysis of defendant's contentions. In *Jackson* the Court addressed a situation in which the plaintiffs brought a medical malpractice claim against the defendant-doctor based on his failure to replace the plaintiff-mother's intrauterine device (IUD) following surgery. *Id.* at 174, 347 S.E.2d at 744-45. The plaintiffs alleged that before surgery, they informed the defendant that they could not afford to have another child and that they were relying on the IUD to prevent pregnancy. *Id.* at 174, 347 S.E.2d at 745. The plaintiffs further alleged that the defendant assured them he would replace the IUD if it became necessary to remove it during surgery. Following surgery, the plaintiffs believed they continued to be protected from pregnancy by the IUD. After plaintiff-mother became pregnant, however, they discovered that the defendant had not in fact retained or replaced her IUD. *Id.*

The defendant in *Jackson*, like defendant here, argued that *Azzolino* precluded the plaintiffs' claim. *Id.* at 179-80, 347 S.E.2d at 748. As in the case at bar, the trial court dismissed the plaintiffs' claim pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). *Id.* at 174, 347 S.E.2d at 745. This Court there concluded, as we do here, that *Azzolino* did not require dismissal of the plaintiffs' claim. *Id.* at 180-82, 347 S.E.2d at 748-49. The Court observed that the facts alleged by the plaintiffs in *Jackson* were similar to those constituting a claim recognized in other jurisdictions and generally referred to as "wrongful conception" or "wrongful pregnancy." *Id.* at 178-79, 347 S.E.2d at 747. The Court stated:

> Our survey shows that the vast majority of courts which have considered wrongful conception cases have viewed the case as being indistinguishable from an ordinary medical malpractice action where the plaintiff alleges a breach of duty on the part of a physician and resulting injury for failure to perform that duty. . . . We find both the reasoning and the results of these authorities quite persuasive.

*Id.* at 179, 347 S.E.2d at 747-48. The Court distinguished *Azzolino* by observing that "the injury alleged in *Azzolino* was the continued existence of the deformed fetus," *id.* at 180, 347 S.E.2d at 748, whereas in *Jackson* it was "the fact of the pregnancy *as a medical condition* that [gave] rise to compensable damages and complete[d] the elements for a claim of negligence," *id.* at 181, 347 S.E.2d at 748. The Court concluded by stating: "[W]e find that plaintiff's complaint contains sufficient allegations to withstand defendant's motion to dismiss pursuant to Rule 12(b)(6) on plaintiff wife's claim for medical malpractice. We also hold that her claim is one that is recognizable in this State." *Id.* at 182, 347 S.E.2d at 749.

In the case at bar, plaintiffs alleged in their complaint that defendant was negligent in his failure to report the results of the blood tests he performed, that plaintiffs were unable to make an informed choice regarding whether to conceive another child as a result; and that plaintiff-wife did in fact become pregnant and give birth to another child. Plaintiffs further specifically alleged that defendant breached the appropriate standards of medical practice in the care he provided plaintiffs. The complaint *does not* allege that plaintiffs' son's very existence—the injury the Court declined to recognize in *Azzolino*—is an injury for which they should be compensated. Thus, the claim is not one precluded by *Azzolino*. Defendant

makes no argument, and we perceive no reason to hold, that plaintiffs' allegations are insufficient to give him "notice of the nature and basis of plaintiffs' claim so as to enable him to answer and prepare for trial," or that there appears on the face of plaintiffs' complaint an "insurmountable bar to recovery on the claim alleged." *Forbis*, 301 N.C. at 701, 273 S.E.2d at 241. Therefore, we hold that plaintiffs have stated a claim for medical malpractice sufficient to survive a motion to dismiss pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). We express no opinion as to whether defendant's alleged negligence actually caused any injury to plaintiffs. That is an issue to be resolved by the trier of fact. *See Williams v. Carolina Power & Light Co.*, 296 N.C. 400, 403, 250 S.E.2d 255, 258 (1979) (" '[P]roximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case.' ") (quoting William L. Prosser, *Torts* § 45 (4th ed. 1971)).

[2] We turn next to plaintiffs' claim for negligent infliction of emotional distress. This Court examined the nature of such a claim at length in *Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A.*, 327 N.C. 283, 395 S.E.2d 85 (1990). The Court explained:

> [T]o state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . ., and (3) the conduct did in fact cause the plaintiff severe emotional distress. Although an allegation of ordinary negligence will suffice, a plaintiff must also allege that severe emotional distress was the foreseeable and proximate result of such negligence in order to state a claim; mere temporary fright, disappointment or regret will not suffice. In this context, the term "severe emotional distress" means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.
>
> . . . Further, a plaintiff may recover for his or her severe emotional distress arising due to concern for another person, *if* the plaintiff can prove that he or she has suffered such severe emotional distress as a proximate and *foreseeable* result of the defendant's negligence.
>
> . . . .

McALLISTER v. HA

[347 N.C. 638 (1998)]

. . . Questions of foreseeability and proximate cause must be determined under all the facts presented, and should be resolved on a case-by-case basis by the trial court and, where appropriate, by a jury.

*Id.* at 304-05, 395 S.E.2d at 97-98 (citations omitted). The Court concluded:

The plaintiffs here allege that they were the parents of the fetus which allegedly died as a result of the defendants' negligence and were in close proximity to and observed many of the events surrounding the death of the fetus and its stillbirth. We conclude that these plaintiffs may proceed with their action for severe emotional distress.

*Id.* at 306, 395 S.E.2d at 98.

Plaintiffs here alleged that plaintiff-wife became pregnant and gave birth to a child with sickle-cell disease as a result of defendant's negligence. Plaintiffs alleged that defendant's negligence caused them "extreme mental and emotional distress," specifically referring to plaintiff-wife's fears regarding her son's health and her resultant sleeplessness. Like the allegations in *Johnson*, plaintiffs' allegations here, while sparse, are sufficient to state a claim for negligent infliction of emotional distress. The allegations "are sufficient to give . . . defendant notice of the nature and basis of plaintiffs' claim so as to enable him to answer and prepare for trial." *Forbis*, 301 N.C. at 701, 273 S.E.2d at 241. Whether defendant's alleged negligence in fact caused either of the plaintiffs to suffer severe emotional distress is a question for the trier of fact. *See Johnson*, 327 N.C. at 305, 395 S.E.2d at 98; *Williams*, 296 N.C. at 403, 250 S.E.2d at 258. We therefore affirm the Court of Appeals decision insofar as it reversed the trial court's order dismissing plaintiffs' action for failure to state a claim upon which relief can be granted.

[3] Defendant next argues that the Court of Appeals erred in its conclusion regarding the damages plaintiffs may seek in their medical malpractice claim. Defendant argues that the decisions of this Court in *Azzolino* and *Jackson* prohibit plaintiffs from seeking child-rearing damages. We agree.

As described above, *Jackson* involved a situation in which the plaintiffs alleged that their physician negligently failed to replace the plaintiff-mother's IUD following surgery, resulting in the birth of a healthy baby. *Jackson*, 318 N.C. at 174, 347 S.E.2d at 744-45. Besides

seeking damages for the expenses of pregnancy and birth, the plaintiffs in *Jackson* also sought to recover for "the general cost and maintenance of said minor child from the date of his birth until such time as he shall become of legal age or emancipated." *Id.* at 177, 347 S.E.2d at 746. With regard to this claim for damages, the Court stated:

> [W]e hold that plaintiff wife may recover damages for the expenses associated with her pregnancy, but that plaintiffs may not recover for the costs of rearing their child. . . .
>
> . . . [T]he decision in *Azzolino v. Dingfelder* would prohibit recovery of damages for the costs of rearing the child. In that case this Court held that "life, even life with severe defects, cannot be an injury in the legal sense." *Azzolino*, 315 N.C. at 109, 337 S.E.2d at 532. Thus, to permit recovery of child-rearing expenses would be *contra* to both the holding and rationale of *Azzolino*.

*Id.* at 182, 347 S.E.2d at 749. This holding controls our analysis of this issue.

Plaintiffs attempt to distinguish their damages claim from the claim in *Jackson* by arguing that they seek damages only for the extraordinary care involved in the treatment of their son's sickle-cell disease, as opposed to all of the expenses associated with rearing a child. We do not find this distinction availing. Rather, such extraordinary costs are simply a part of child-rearing expenses for parents rearing an impaired child. Though *Jackson* involved a healthy child, the Court did not distinguish between healthy and unhealthy children in its holding on this issue. In fact, the Court relied explicitly on *Azzolino*, a case involving a child with Down's syndrome.

Further, the complaint in this case is similar to the complaint of the plaintiffs in *Jackson* in many respects. Both involved allegations of preconception medical malpractice which allegedly resulted in each plaintiff-mother becoming pregnant and giving birth to a child. Further, both involved alleged nonfeasance by the defendant-doctor. In *Jackson* the alleged nonfeasance was the failure to replace the plaintiff's IUD, while in this case it was the failure to inform plaintiffs of their blood-test results.

It bears noting that none of these three cases—*Jackson*, *Azzolino*, or the case at bar—involved a situation in which plaintiffs alleged that the defendant-doctor negligently injured a fetus and thus caused an otherwise normal child to be born in an impaired condition. The child in *Jackson* was born without impairment. The disor-

der in *Azzolino*, Down's syndrome, and the disorder in this case, sickle-cell disease, are both genetic, and thus are not the result of any injury negligently inflicted by either defendant-doctor.

Because we find *Jackson* controlling, we disavow the Court of Appeals opinion insofar as it held that plaintiffs could seek, in their medical malpractice claim, a version of child-rearing expenses, the costs of the extraordinary care for their child.

[4] The final issue involves the timeliness of plaintiffs' service on defendant of the proposed record on appeal. Plaintiffs gave notice of appeal from the trial court's order on 18 March 1996. Plaintiffs served the proposed record on appeal on defendant on 5 June 1996, seventy-eight days after giving notice of appeal. On the same date, 5 June 1996, plaintiffs filed a motion with the Court of Appeals seeking an extension of time under Rule 27(c) of the North Carolina Rules of Appellate Procedure. Plaintiffs sought an extension of time because they had not served the proposed record on appeal on defendant within the thirty-five days mandated by Rule 11(a) and (b) of the North Carolina Rules of Appellate Procedure. On 10 June 1996, the Court of Appeals granted plaintiffs' motion for an extension of time and deemed the proposed record timely served. Defendant now argues that the Court of Appeals erred by granting plaintiffs' motion.

Rule 27(c) of the North Carolina Rules of Appellate Procedure provides, in pertinent part:

> Except as herein provided, courts for good cause shown may upon motion extend any of the times prescribed by these rules or by order of court for doing any act required or allowed under these rules; or may permit an act to be done after the expiration of such time.

N.C. R. App. P. 27(c). When a lower court is given discretion to allow an extension of time, the court's decision on the matter will be found to be erroneous only upon a showing of an abuse of discretion. *See Tinkham v. Hall*, 47 N.C. App. 651, 654, 267 S.E.2d 588, 591 (1980). Defendant does not argue that the Court of Appeals abused its discretion in granting plaintiffs' Rule 27(c) motion, but rather asserts that "based on the plaintiffs' failure to comply with the time limitations set out by the applicable Appellate Rules, the plaintiffs' appeal should have never been reviewed by the Court of Appeals." We perceive no reason to hold that the Court of Appeals abused its discretion in granting plaintiffs' motion; defendant's argument on this issue is without merit.

Because we affirm the Court of Appeals opinion insofar as it reversed the trial court's order dismissing plaintiffs' complaint, we remand the case to the Court of Appeals for further remand to the Superior Court, Robeson County, to allow plaintiffs to proceed on their claims for medical malpractice and negligent infliction of emotional distress.

AFFIRMED.