An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-426

Filed 18 March 2026

Durham County, No. 24 CV 003858-310

ANGELA MATULIONIS, Plaintiff,

v.

CHRISTIAN LOIDL and
PAMELA BELL, Defendants.

Appeal by Plaintiff from order entered 23 October 2024 by Judge Hoyt G. Tessener in Durham County Superior Court. Heard in the Court of Appeals 14 October 2025.

*Angela Matulionis pro se as Plaintiff–Appellant.*

*No brief filed by Defendants–Appellants.*

MURRY, Judge.

Angela Matulionis (Plaintiff) appeals the trial court's order granting Christian Loidl and Pamela Bell's (collectively, "Defendants") motion to strike certain paragraphs of her complaint, motion for sanctions, and motions for dismissal of several claims. More specifically, the order dismissed Plaintiff's claims for intrusion upon seclusion (IUS), intentional infliction of emotional distress (IIED), negligent

infliction of emotional distress (NIED), and civil conspiracy. For the following reasons, this Court affirms in part and reverses in part the trial court's order.

## I.    Background

This case forms yet another strand in a complex weave of "numerous prior proceedings" between Plaintiff, Defendants, and Matthew R. Long—ex-boyfriend to Plaintiff and ex-husband to Defendant Bell, Plaintiff's estranged twin sister. Some portions of the litigation stem from a custody dispute over Plaintiff and Defendant Loidl's daughter, whom Plaintiff fathered with Long while married to Loidl. Others stem from Defendant Bell's prior mischaracterization of Plaintiff as a prostitute. We now seek to disentangle the particular knots raised by Plaintiff's disparate claims here.

Plaintiff and Loidl married on 27 April 2015 and divorced on 28 October 2022. Plaintiff gave birth to their daughter on 25 September 2015, whom Plaintiff conceived with Long prior to marrying Loidl. Loidl and Long maintained a friendship from 2018 onwards, while Bell "entered into a romantic relationship" with Long "[i]n or around February 2023." They later annulled their marriage in late 2023. Plaintiff has since remarried to a Dr. Ilvydas Matulionis.

From 2022 to the present, Plaintiff alleged in her 17 May 2024 complaint a complicated series of civil conspiracies between Defendants and Long "to cause [her] distress . . . , damage [her] reputation and standing, and bring about the end of [her] marriage to Dr. Matulionis." More specifically, she claimed that Loidl tortiously

intruded upon her seclusion by "unlawfully access[ing]" her Asus laptop she left at his house, as well as "a number of opened and unopened pieces of mail," with the purpose of "caus[ing her] financial damages, and emotional distress." Plaintiff then asserted that "Loidl disseminated the contents of [her] private records, files, mail, and Asus laptop to Defendant Bell, Matthew Long, and possibly other unnamed third parties." She also intimated that they sought to intimidate Matulionis via "a series of cryptic messages" on LinkedIn.

Among other "well-pleaded allegations," *Johnson v. Bollinger*, 86 N.C. App. 1, 4 (1987) (citing N.C. R. Civ. P. 12(b)(6)), Plaintiff alleged a series of additional facts that the trial court ultimately struck in whole or in part in response to Defendants' motion:

10. Plaintiff's text messages, email correspondence, personal recollections and witness corroboration to be presented at trial evidence that, since Plaintiff and Defendant Loidl's separation in 2017, ~~Defendant Loidl has expressed a desire to harm Plaintiff and make certain that she experiences monetary losses and emotional distress~~.

11. Defendant Bell has engaged in numerous schemes and designs intended to harm Plaintiff. ~~Defendant Bell's specific acts in this regard are too numerous to be fully detailed in this filing but shall be enumerated to the extent allowable at trial.~~

. . . .

13. ~~As a consequence of Defendant Loidl's willful blindness to the damage caused by his own conduct, Loidl faulted Plaintiff entirely for the failure of their marriage.~~

. . . .

17. Beginning in late May 2023 and continuing until the present time, Defendants have stalked and harassed Matulionis~~, a respected physicist and pharmaceutical industry expert~~.

. . . .

20. In March 2017, Defendant Loidl initiated child-custody litigation against Plaintiff and Matthew Long as Intervenor seeking to obtain sole custody of Plaintiff and Mr. Long's biological child.

21. Defendant Loidl initiated the child-custody litigation subsequent to Plaintiff separating from Defendant Loidl and upon him being informed that Plaintiff and Long would not consent to a joint custody arrangement with him.

(Quotation modified; strikethroughs added.) At one point in the complaint, Plaintiff characterized Long as a "perpetually unemployed alcoholic" (¶ 24) and Bell as a prostitute, pornographer, and international drug smuggler (¶ 26). Plaintiff also accused Loidl of "financial[ ] and emotional[ ] abus[e]" that "forced her to flee the marital home without notice in late January 2017" (¶ 30). Finally, she characterized Defendants' alleged conspiracies as an attempt "to give . . . Long an advantage in [his] . . . highly contentious child[-]custody litigation with Plaintiff" (¶ 36).

In response, Defendants moved to sanction Plaintiff, to strike a broad variety of paragraphs from her complaint, and to dismiss all claims. *See* N.C. R. Civ. P. 11(a) (sanctions) [hereinafter Rule]; *id.* 12(f) (stricken material); *id.* 12(b)(6) (involuntary dismissal for "[f]ailure to state a claim"). At a 23 October 2024 hearing on these various motions, Plaintiff admitted that she lacked any "firsthand knowledge of how [any] third parties" might have obtained her purportedly embarrassing information from the laptop she left at Loidl's house. She also voluntarily dismissed the NIED claim against Bell at that point in the proceedings.

In response, the trial court ultimately granted the motion for sanctions in part, granted the motion to strike in part, and granted the motion to dismiss in whole with prejudice. It also dismissed Plaintiff's civil-conspiracy claim as moot. In so doing, it "found a violation of Rule 11 but declined to impose sanctions or a gatekeeper order" and instead "cautioned that her future pleadings must be well grounded in fact and law to avoid" tangible sanction in the future. (Brackets omitted.) Plaintiff timely appealed this order.

## II. Jurisdiction

This Court has jurisdiction to hear Plaintiff's appeal of the trial court's order because its dismissal of her claims is a "final judgment of a superior court." N.C.G.S. § 7A-27(b)(1) (2025).

## III. Analysis

On appeal, Plaintiff argues that the trial court erred by dismissing her claims of IUS, NIED, and IIED with prejudice; by dismissing her claim of civil conspiracy as moot; by striking in part certain paragraphs of her complaint; and by sanctioning in part her litigation conduct to date. Motions to dismiss under Rule 12(b)(6) implicate a *de novo* review, *Horne v. Cumberland Cty. Hosp. Sys.*, 228 N.C. App. 142, 144 (2013) (citing *Toomer v. Garrett*, 155 N.C. App. 462 (2002)), whereas sanctions and strikes are subject to the trial court's sound discretion, *see Fatta v. M&M Props. Mgmt.*, 224 N.C. App. 18, 26 (2012).

In an initial complaint, a plaintiff must "set forth a claim for relief" that contains a "short and plain statement of . . . sufficient particularity" and a "demand for judgment" to survive a Rule 12(b)(6) dismissal. Rule 8(a)(1)–(2) (brackets omitted). This " 'notice theory' of pleading" requires only "sufficient notice of the events . . . which produced the claim to enable the adverse party to understand" it in such a manner as "to prepare for trial." *Sutton v. Duke*, 277 N.C. 94, 104 (1970). *Contra Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining federal "plausibility standard" of *Twiqbal*); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) ("plausibility standard at the pleading stage"). When "constru[ing] as to do substantial justice" a pleading in response to a Rule 12(b)(6) motion, Rule 8(f), we "treat[ ] as true" any remaining "well-pleaded allegations." *Bollinger*, 86 N.C. App. at 4.

Based on these considerations of the trial court's order, this Court (1) reverses the dismissal of Plaintiff's IUS and IIED claims; (2) affirms the dismissal of the NIED claim; (3) reverses in part the dismissal of her civil-conspiracy claim to the extent it derives from either her IUS or IIED claims; (4) affirms in part the dismissal of her civil-conspiracy claim to the extent it derives from her NIED claim; (5) affirms the partial strikes of Plaintiffs' complaint; and (6) affirms the partial sanction of her litigation conduct to date.

## A. Intrusion Upon Seclusion

First, Plaintiff argues that the trial court erred by dismissing with prejudice her claim that Defendant Loidl tortiously intruded upon her seclusion by accessing

her laptop. We agree. At North Carolina common law, the IUS tort is "the intentional intrusion 'physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . [where] the intrusion would be *highly offensive* to a reasonable person.' " *Toomer*, 155 N.C. App. at 480 (alterations in original; emphasis added) (quoting *Miller v. Brooks*, 123 N.C. App. 20, 26–27 (1996)). In this context, a "highly offensive" intrusion includes the "unauthorized examination of . . . sensitive information such as medical diagnoses and financial information." *Id.*; *cf. Miller*, 123 N.C. App. at 26 (personal correspondence) (citing Restatement (Second) of Torts § 652B cmt. b (A.L.I. 1977)).

Plaintiff's accusations here meet this minimum standard. Defendants possessed her laptop during the contested period in question. She claims, "[u]pon information and belief," that Loidl "unlawfully accessed [her] Asus laptop" in an effort "to identify information and material that Defendants could then use to shame[ ] and humiliate" her. Given the sensitive interrelations between the parties, a "reasonable person" would find "highly offensive," *Toomer*, 155 N.C. App. at 480, an unauthorized release of any " 'dossier' of information pertaining to Plaintiff . . . to the public at large." Although Plaintiff admitted to the trial court that she "ha[d] no firsthand knowledge of how the third parties obtained the [laptop's] information from" Loidl, we ignore "matters outside the pleadings" when assessing a Rule 12(b)(6) motion on appeal, *Stanback v. Stanback*, 297 N.C. 181, 205 (1979), *abrogated in part on other grounds by Dickens v. Puryear*, 302 N.C. 437 (1981). Because her "complaint's

allegations give adequate notice of the nature and extent of" her IUS claim, *Bollinger*, 86 N.C. App. at 3, Plaintiff "state[s] a claim upon which relief can be granted," Rule 12(b)(6). Thus, this Court reverses the trial court's dismissal with prejudice of Plaintiff's claim of tortious IUS.

## B. Infliction of Emotional Distress

Second, Plaintiff argues that the trial court erred by dismissing with prejudice her claim that Defendants both intentionally and negligently inflicted her emotional distress through their repeated actions. We disagree on the first count but agree on the second.

### 1. Intentional

Our common-law "tort of intentional infliction of emotional distress" requires a defendant to engage in "(1) extreme and outrageous conduct[ ] (2) which is intended to cause and does cause (3) severe emotional distress to another." *Hall v. Post*, 323 N.C. 259, 268 (1988) (quoting *Dickens*, 302 N.C. at 452). The conduct in question must implicate more than "mere temporary fright, disappointment[,] or regret." *Johnson v. Ruark Obstetrics & Gynec'y Assocs.*, 327 N.C. 283, 304 (1990), and excludes "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," *Bollinger*, 86 N.C. App. at 6 (quotation omitted).

We analogize Plaintiff's claim here to the *prima facie* IIED claim brought in *Miller v. Brooks*. In *Miller*, the plaintiff ex-husband sued his ex-wife and the private investigator she hired to gather information on him in preparation for a divorce.

*Miller*, 123 N.C. App. at 23. He brought in relevant part a claim for a tortiously "intentional and highly offensive intrusion upon his seclusion." *Id.* at 24. In his initial complaint, the plaintiff alleged that the two defendants "installed a hidden videotape camera in [his] bedroom ceiling." *Id.* He also alleged that the ex-wife "intercepted, sorted through, and threw away some of his mail." *Id.* at 26. By way of formally recognizing the "intrusion tort" in North Carolina's common law, the *Miller* Court affirmed the trial court's denial of the Rule 12(b)(6) motion to dismiss the plaintiff's seclusion claim. *Id.* at 24. In doing so, it recognized "opening . . . personal mail" and intruding upon a "reasonable expectation of privacy" as "wrongs protected by th[at] tort" which "would be highly offensive to a reasonable person." *Id.* at 26 (first citing Restatement (Second) of Torts § 652B (A.L.I. 1977); and then citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 117 (5th ed. 1984)).

So too here. Plaintiff alleges discrete actions by Defendants that evidence supposedly "clear malice"—namely, that they "engaged in countless attempts to harm her social and professional interests," that Loidl "initiated unsolicited and unwanted contact with her then-fiancé," and that he "utilized LinkedIn to convey a series of cryptic messages to Dr. Matulionis." (Brackets omitted.) "[T]aken as true" at this stage in the proceedings, *McAllister v. Ha*, 347 N.C. 638, 638 (1998), these facts fall outside those otherwise nonactionable "rough edges of our society still in need of filing down," *Bollinger*, 86 N.C. App. at 6 (ellipses and quotation omitted). Because Plaintiff's complaint *prima facie* states at least some "facts which could be presented

in support of [its] claim[s]" for IIED as a result, this Court reverses the trial court's dismissal with prejudice of that specific claim against Defendant Loidl. *Id.* at 4.

### 2. *Negligent*

To state a claim for *negligent* infliction of emotional distress under our common law, though, the plaintiff "must allege that (1) the defendant negligently engaged in conduct (2) reasonably foreseeable to cause the plaintiff severe emotional distress, and (3) that did in fact cause the severe emotional distress." *Johnson*, 327 N.C. at 304 (citation modified). NIED contextually differs from its intentional counterpart to the extent that the defendant's conduct in question need only be "reasonably foreseeable." *Id.* And when pleading negligent infliction more specifically, a plaintiff must facially distinguish allegations of intentional acts from those of mere negligence. *See Horne*, 228 N.C. App. at 149 ("[A]llegations of only *intentional* conduct, even when construed liberally on a motion to dismiss, cannot satisfy the negligence element of an NIED claim." (ellipses omitted)).

We analogize Plaintiff's insufficient NIED claim to that brought in *Horne v. Cumberland County*. In *Horne*, the plaintiff sued her former hospital employer in part for NIED incurred by her firing. *Id.* at 143. The defendant employer hired the plaintiff as a CT technologist starting in early 2011. *Id.* Over the next two months until her firing on 18 April 2011, the defendant "wrote up" plaintiff on four separate occasions for conduct violations ranging from "carelessness in duty" to "walking out of a procedure." *Id.* (brackets omitted). In her complaint, the plaintiff alleged in part that

the defendant's "action[s] toward [her] constitute[ ] extreme and outrageous conduct which was *intended* to . . . cause her severe emotional distress." *Id.* at 149. The *Horne* Court affirmed the trial court's dismissal of her NIED claim because the "complaint recount[ed] only *intentional* conduct on the part of" the defendant. *Id.* It further reasoned that "[a]llegations of intentional conduct . . . , even when construed liberally on a motion to dismiss, cannot satisfy the *negligence* element of an NIED claim." *Id.* (emphasis added).

Plaintiff's NIED claim here fails for the same reason. In her third claim for relief, she alleges—without any substantive change—those same facts in the context of negligence as she does for the immediately preceding claim of intentionality. At no point does Plaintiff attempt to distinguish the offending acts *intentionally* committed by Defendants from those merely committed *negligently*. Instead, she simply recharacterizes Defendants' "interference" with her personal relationships and "access" of her "private and personal property" as "negligence in failing to use ordinary and reasonable care to preserve her rights." (Brackets omitted.) At one point, she even states that Defendants acted "*solely* out of malice" towards her. (Emphasis added.) She also fails to "reference any duty owed to her by" Defendants that they would need to breach as a result of these alleged actions. *Id.* Because this "failure to allege such a duty owed by . . . [D]efendant[s] to . . . [P]laintiff is fatal to [her] NIED claim on a motion to dismiss," this Court affirms the trial court's dismissal with prejudice of that claim against Defendants. *Id.*

## C. Civil Conspiracy

Third, Plaintiff argues that the trial court erred by dismissing as moot her claim that Defendants engaged in a civil conspiracy of tortious conduct against her. We agree only to the extent that the civil-conspiracy claim derives from either her IUS or IIED claim. Although occasionally referred to as a separate claim, *e.g.*, *Dickens*, 302 N.C. at 456, North Carolina common law does not recognize civil conspiracy as an "independent cause of action," *Toomer*, 155 N.C. App. at 483. "Accurately speaking, [t]he action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself." *Reid v. Holden*, 242 N.C. 408, 414 (1955) (ellipses omitted) (quoting 11 Am. Jur. *Conspiracy* § 45 (1938)). Therefore, a plaintiff must allege in her complaint (1) "an underlying claim for underlying conduct," (2) an "agreement of two or more parties to carry out the conduct," and (3) an "injury resulting from that conduct." *Toomer*, 155 N.C. App. at 483. Only if her "evidence of the agreement . . . create[s] more than a suspicion or conjecture" of conspiracy can the claim survive dismissal. *Henderson v. LeBauer*, 101 N.C. App. 255, 261 (1991) (citing *Dickens*, 302 N.C. at 456). And because the prejudicial dismissal of a tort claim "is the same as a judgment on [its] merits, . . . any appeal concerning a directed verdict on issues predicated upon that [claim] is rendered moot." *Bailey v. Gitt*, 135 N.C. App. 119, 121 (1999) (citation omitted); *accord In re Oghenekevebe*, 123 N.C. App. 434, 437 (1996).

Here, the trial court rendered Plaintiff's civil-conspiracy claim moot only to the extent it derived from her NIED claim. The civil-conspiracy claim remains a live proposition to the extent Plaintiff alleged that Defendants conspired to either intrude upon her seclusion or intentionally inflict her emotional distress. The "voluminous email and text messages" between her and Defendants indicate sustained communications between the various parties, thus meeting at least the second element of civil conspiracy. As to the first and third elements, Plaintiff *prima facie* alleges the underlying IUS and IIED claims—as well as the "severe emotional stress and embarrassment" that they caused—for the various reasons discussed above. But Plaintiff's procedurally deficient NIED claim necessarily collapses its derivative conspiracy claim. She does not adequately plead the former and thus cannot show that the latter "in fact existed." *Henderson*, 101 N.C. App. at 261. Based on these considerations and "tak[ing] as true" the allegations on their face, this Court affirms in part and reverses in part the trial court's dismissal of Plaintiffs' civil-conspiracy claims as moot. *McAllister*, 347 N.C. at 638.

## D. Motion to Strike

Fourth, Plaintiff argues that the trial court erred by granting in part Defendants' motion to strike certain paragraphs of purportedly relevant allegations from her complaint. We disagree. Under Rule 12(f), a trial court may "stri[ke] from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter" "[u]pon motion made by a party." Rule 12(f). In

doing so, the trial court can better "avoid expenditure of time and resources before trial by removing spurious issues." *Estrada v. Jaques*, 70 N.C. App. 627, 642 (1984). Because "justice is better served by allowing the parties to fully litigate their claims," though, *Carpenter v. Carpenter*, 189 N.C. App. 755, 761 (2008) (quotation omitted), a trial court should not grant a motion to strike "[i]f there is *any* question as to whether an issue may arise," *Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 316 (1978) (emphasis added) (citing 2A *Moore's Federal Practice* ¶ 12.21 (2d ed. 1976)).

Despite its subjection to the trial court's discretion, this question still raises a high standard for the movant to meet. *See Carpenter*, 189 N.C. at 757, 760–61. Among those few occasions that a movant has appealed stricken material to our appellate courts, at least one of three non-inclusive preconditions must buttress the order: (1) that the material have no "possible bearing on the litigation," *id.* at 761, (2) that the "absence of those allegations" before the court not otherwise prejudice the non-movant, *Long v. City of Charlotte*, 306 N.C. 187, 204 (1982), *superseded by statute on other grounds*, Act of Jul. 10, 1981, ch. 919, 1981 N.C. Sess. Laws 1382, *as recognized in Kirby v. N.C. Dep't of Transp.*, 368 N.C. 847 (2016), or (3) that the material would be inadmissible at trial, *e.g.*, *Faulconer v. Wysong & Miles Co.*, 155 N.C. App. 598, 602 (2002) (parol evidence); *Peace v. Peace Broad. Corp.*, 22 N.C. App. 631, 633 (1974) (hearsay). *Accord* 1A N.C. Index 4th *Appeal and Error* § 481, Westlaw (database updated July 2025) (describing these three traits).

### 1. *Redundant*

The trial court did not abuse its discretion in partially striking ¶ 10 from the complaint because it may readily omit any "superfluous" allegation "already contained" elsewhere within the pleading. *Redundancy*, *Black's Law Dictionary* (12th ed. 2024) [hereinafter *Black's Law*]. In the filing itself, Plaintiff alleges in part that Loidl sought to "harm [her] and make certain that [she] experiences monetary loss and emotional distress" without further explanation. Defendants claim that this sentence is too "speculative" to permit in the record. But this language merely repeats previous allegations of Loidl's purportedly "countless attempts to harm Plaintiff's social and professional interests." Thus, this Court affirms the trial court's partial strike of ¶ 10 on grounds of redundancy to her broader claims.

### 2. *Irrelevant*

Nor did the trial court abuse its discretion by striking multiple paragraphs in whole or in part due to their irrelevancy. A pleaded allegation descends into legal irrelevancy by forgoing any "substantial relation to the action" or capacity to "affect the [trial] court's decision." *Irrelevant*, *Black's Law*. Many of Plaintiff's claims throughout her complaint fall prey to these flaws. *First*, Plaintiff describes Bell's "specific acts" that are "too numerous to be fully detailed in this filing" but promises to later "enumerate[ ]" them "to the extent allowable at trial." But a motion to dismiss expressly restricts itself to the complaint's content (and any valid attachments). *See Bollinger*, 86 N.C. App. at 5. *Second*, Plaintiff attacks "Loidl's willful blindness to the damage caused by his own conduct" in "end[ing] the marital relationship between

them" amidst an otherwise preservable assertion of his "various plots and schemes." She further characterizes this conduct as "financial and emotional abuse" that "forced her to flee the marital home without notice." (Brackets omitted.) While tragic, *intra*-marital strife is logically irrelevant to claims of tortious conduct committed *post*-dissolution. *Third*, Plaintiff's current husband may be "a respected physicist and pharmaceutical industry expert," but we fail to see how his professional stature affects Plaintiff's accusations of attacks against her own. *Fourth*, although the parties' previous custody battles certainly inform the backdrop of the parties' deep rancor, it does not speak to the issues at hand: whether Defendants committed the aforementioned torts against Plaintiff. The parentage of Plaintiff's minor child and "Long's highly contentious child custody litigation with Plaintiff" form no logical bases for her other claims. For the reasons discussed above, Plaintiff's claims do not rely on these particular facts. Thus, this Court affirms the trial court's various full and partial strikes of ¶¶ 11, 13, 17, 20–21, 30, 36 on grounds that they lack any "substantial relation to the action" or capacity to "affect the [trial] court's decision." *Irrelevant*, *Black's Law*.

### 3. *Scandalous*

In both ordinary and legal parlance, an allegation becomes a "scandalous matter" when so "disgraceful . . . and irrelevant to an action" that its inclusion "in a court paper" would be manifestly "improper." *Scandalous Matter*, *Black's Law*; *see Scandalous*, *The American Heritage Dictionary of the English Language* (rev. 5th ed.

2016) ("Containing material damaging to reputation; defamatory"). Amidst her complaints of Defendants' purportedly tortious conduct, Plaintiff alleges "upon verifiable information and belief" that her twin sister "engages in sexual intercourse for financial compensation, acts in amateur pornography, and facilitates the illegal transport of narcotics within the United States and internationally" in her spare time. (Quotation modified.) Plaintiff also characterizes her ex- (and sister's current) partner as a "perpetually unemployed alcoholic who continues to drink excessively." If these factually unsupported allegations are not the sort of disgraceful improprieties that Rule 12(f) seeks to exclude from the courtroom, we struggle to comprehend what would be. Thus, this Court affirms the trial court's full strikes of ¶¶ 24, 26 on grounds of scandalousness.

## E. Sanctions

Fifth, Plaintiff argues that the trial court erred by granting in part Defendants' motion for Rule 11 sanctions of her litigious conduct to date. Although we review *de novo* the "imposition of sanctions" per se under Rule 11, the "*choice* of sanction" is subject only to an abuse-of-discretion standard. *Crutchfield v. Crutchfield*, 132 N.C. App. 193, 195 (1999) (citing *Turner v. Duke Univ.*, 325 N.C. 152, 165 (1989)). We dismiss this argument out of hand and affirm the order based on the order's express "declin[ation] to impose sanctions or a gatekeeper order" even though it "f[ou]nd[ ] a violation of Rule 11." Plaintiff engaged in numerous acts of misfeasance throughout her pretrial documentation for the reasons discussed above, yet the trial court merely

"cautioned that [her] future pleadings must be well grounded in fact and law" going forward. Had the trial court imposed in fact either financial sanctions or a gatekeeper order, we might have occasion to review its discretionary action here. It did neither, and thus this Court affirms its partial grant of Defendants' motion for Rule 11 sanctions.

## IV. Conclusion

For the reasons discussed above, this Court (1) reverses the trial court's dismissal with prejudice of Plaintiff's IUS and IIED claims; (2) affirms its dismissal with prejudice of her NIED claim; (3) reverses in part its dismissal of her civil-conspiracy claim to the extent it derives from either her IUS or IIED claims; (4) affirms in part its dismissal of her civil-conspiracy claim to the extent it derives from her NIED claim; (5) affirms its partial grant of Defendants' Rule 12(f) motion to strike certain paragraph's from her complaint; and (6) affirms its partial grant of their Rule 11 motion for sanctions against her.

AFFIRMED IN PART AND REVERSED IN PART.

Judge WOOD concurs.

Judge STROUD concurs in the result only.

Report per Rule 30(e).